the district court grant appellant's motion for summary judgment.

**Kerry J. MATTHEWS and Other Air Traffic Control Specialists, et al., Plaintiffs-Appellants,**

v.

**UNITED STATES of America; Department of Transportation; Federal Aviation Administration, et al., Defendants-Appellees.**

No. 86–1005.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 14, 1986.

Decided Jan. 27, 1987.

Stephen E. Hart, Paul Blankenstein, Dept. of Justice, Washington, D.C., William Kanter (Lead Counsel), E. Roy Hawkens, Al J. Daniel, Jr., argued, for defendants-appellees.

Steven Z. Cohen, Cohen and Ellias, Birmingham, Mich., Phillip S. Wood, Paskey and Wood, Aurora, Ill., Richard Johnson, argued, for plaintiffs-appellants.

Before MARTIN, MILBURN and BOGGS, Circuit Judges.

BOGGS, Circuit Judge.

Appellants are former air traffic controllers who were discharged by the Federal Aviation Administration ("FAA"), after the Professional Air Traffic Controllers Organization ("PATCO"), strike in August 1981. The controllers in this action brought suit in federal district court on April 20, 1982, alleging that the FAA deprived them of one of their statutory appeal routes under the Civil Service Reform Act by sending out misleading notices upon their discharge. They asked the court to issue a writ of mandamus to the agency under 28 U.S.C. § 1361, ordering it to revoke the notice and reinstate the discharged controllers. The controllers now appeal the district court's denial of the writ based on lack

of subject matter jurisdiction. We hold that the district court lacked subject matter jurisdiction because exclusive jurisdiction over the controllers' claim is vested in the United States Claims Court under the Tucker Act, 28 U.S.C. §§ 1346, 1491. Accordingly, finding a transfer to be in the interest of justice, we transfer the case to the Claims Court, 28 U.S.C. § 1631.

This action arises out of PATCO's strike against the FAA in August 1981. The terms and conditions of the controllers' employment with the FAA were governed by the Civil Service Reform Act ("CSRA"), 5 U.S.C. § 1101, *et seq.* The CSRA provides discharged employees with two possible appeal routes: an appeal to the Merit Systems Protection Board ("MSPB"), or grievance and arbitration through the union. The FAA informed the controllers of the two appeal routes in their discharge letters, as it was required to do, but it also advised the controllers that the government was seeking to decertify PATCO so that the grievance and arbitration route might not be available.[1] The controllers all chose to appeal their discharges to the MSPB. Not a single air traffic controller in the country chose to pursue grievance and arbitration.

The controllers represented here also brought suit in federal district court, asserting that the FAA deprived them of the opportunity to challenge their terminations through the grievance procedures of the collective bargaining agreement. By analogy to a few cases in private sector labor law, they argued that PATCO, even if decertified, would still have been able to represent the discharged employees through the grievance process. They thus contended that the FAA's notice misled them into forfeiting their grievance rights. They asked the court to force the agency to revoke the notice and provide the controllers with the second statutory appeal route.[2] They requested reinstatement and back pay to put them in the same position as if the notice had not been issued.

The district court granted the defendants' motion to dismiss on October 16, 1985, holding that the controllers' action was foreclosed by the Supreme Court decision in *Bush v. Lucas*, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983), which held that a federal employee could not maintain a private damages action against a government employer for violation of first amendment rights because the federal employment relationship was governed by comprehensive procedural and substantive provisions giving meaningful remedies against the United States. The Court stated that:

> The only way in which plaintiffs could defeat the application of *Bush* in the instant case would be by showing that the relief sought could not be obtained through the CSRA procedure.... A quick glance at the relief plaintiffs seek—reinstatement with full back pay, seniority, leave and other benefits—clearly reveals that plaintiffs need look no further than the CSRA procedures to obtain the relief they seek.

The controllers appeal the district court's decision. They argue that their action was not foreclosed by *Bush v. Lucas* because they are seeking to implement the statutory scheme already in place rather than supplementing the Congressional scheme with a new judicial remedy as in *Bush*. Because we conclude that exclusive jurisdiction over the controllers' claims resides in the Claims Court, we do not reach the

---

**1.** PATCO gave the same advice to its members in a memorandum sent to the union's local presidents and Benefits Committee members on June 12, 1981, stating that, "an MSPB proceeding is recommended to avoid problems arising from possible decertification of the union and resulting loss of the right to grieve matters."

**2.** The controllers claimed jurisdiction in the district court under 28 U.S.C. §§ 1331, 1343 and 1361. On appeal, they limit their basis for jurisdiction in the district court to the mandamus statute, 28 U.S.C. § 1361, which provides as follows:

> The district court shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

question of the application of *Bush v. Lucas* to the present situation.

█ The Tucker Act[3] vests exclusive jurisdiction over money claims against the United States greater than $10,000 in the United States Claims Court. *Hahn v. United States,* 757 F.2d 581, 586 (3d Cir. 1985). It is only under the terms of the Tucker Act that the United States waives its sovereign immunity to such claims, and this consent to suit is a jurisdictional prerequisite. *United States v. Mitchell,* 463 U.S. 206, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983). It is not the nature of the cause of action which determines whether jurisdiction is vested in the district court or the Claims Court but rather the nature of the relief requested. *Hahn,* 757 F.2d at 586.

█ The controllers requested relief in the form of reinstatement to their former positions, back pay, seniority and other benefits. Full back pay for each of the numerous controllers represented here for the period from the discharge until the present is obviously much greater than $10,000. Therefore, the district court did not have jurisdiction over the controllers' claim, as exclusive jurisdiction was vested in the Claims Court under the Tucker Act.

Appellants now claim that their reference to back pay was premature, and attempt to limit their request to reinstatement. They contend that their right to back pay upon reinstatement is not properly characterized as "money damages," but rather represents a self-executing, statutory obligation under the Back Pay Act, 5 U.S.C. § 5596. However, a judgment that the controllers are entitled to reinstatement would still result in the United States eventually being obliged to pay out money. Appellants cannot take their claim for relief out of the Tucker Act simply by changing its label.

A split of authority exists among the circuits on the issue of whether the district court can assume jurisdiction over equitable claims based on the same facts as monetary claims over which the Claims Court would have jurisdiction. There are cases which hold that the district court can take jurisdiction over a claimant's nonmonetary claims if the nonmonetary relief sought is the primary purpose of the suit. In other words, the declaratory or injunctive relief sought must have significant prospective effect or considerable value apart from merely determining monetary liability of the government. *State of Minnesota by Noot v. Heckler,* 718 F.2d 852, 858 (8th Cir.1983); *Hahn,* 757 F.2d at 590. These cases also hold that district court jurisdiction over a suit for nonmonetary relief is not foreclosed by the fact that it

---

**3.** 28 U.S.C. § 1491 provides in relevant part:

(a)(1) The United States Claims Court shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort....

(2) To provide an entire remedy and to complete the relief afforded by the judgment, the court may, as an incident of and collateral to any such judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records, and such orders may be issued to any appropriate official of the United States. In any case within its jurisdiction, the court shall have the power to remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just.

28 U.S.C. § 1346 provides in relevant part:

(a) The district courts shall have original jurisdiction, concurrent with the United States Claims Court, of:

\* \* \* \* \* \*

(2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort....

The Claims Court, established by the Federal Courts Improvement Act of 1982, P.L. No. 97–164, 96 Stat. 25, inherited the trial jurisdiction of the former Court of Claims. The appellate jurisdiction of the Court of Claims is now vested in the U.S. Court of Appeals for the Federal Circuit.

may later be the basis for an award of damages against the United States by its collateral estoppel effect in the Claims Court.

In *Noot* the Department of Health and Human Services had decertified certain state hospitals and disallowed federal Medicaid payments to the state for patients in those facilities. The Eighth Circuit held that the district court had jurisdiction to grant declaratory relief to the state because the prospective independent significance of the declaratory relief on the current and future Medicaid claims dwarfed the amount of the past disallowance the state sought to overturn. The circuit court limited the district court's jurisdiction to prospective relief, however, and vacated the district court's monetary award restoring past disallowance funds to the state.

The plaintiffs in *Hahn,* participants in a national health service corps scholarship program, sought to enjoin the United States from denying class members "constructive service credits" for their professional education in calculating their basic pay. The Third Circuit held that the district court had no power to grant monetary relief on their constitutional claims or to hear their contractual claims seeking only monetary relief. The court held that the district court did have jurisdiction over the claims for injunctive and declaratory relief because of the significant possible effect on future decisions concerning entering the scholarship program. However, the court reversed the district court and denied plaintiffs' claims for equitable relief on the merits.

In *State of Tennessee ex rel. Leech v. Dole,* 749 F.2d 331 (6th Cir.1984), *cert. denied,* 472 U.S. 1018, 105 S.Ct. 3480, 87 L.Ed.2d 615 (1985), this court held that the district court had jurisdiction to hear a suit for injunctive and declaratory relief to prevent the federal government from seeking restitution of overpayments of highway funds to the state. This was a more congenial case for jurisdiction than *Noot* or *Hahn,* as it was doubtful whether the claim could have been heard at all in the Court of

Claims. The state was not seeking to have the federal government pay out any more money, but only trying to retain money that had already been paid out to the state by the United States.

None of these cases deal with the question as to whether the district court has jurisdiction to grant the equitable relief of reinstatement when the accompanying claim for back pay can only be heard in the Claims Court. Only the D.C. Circuit has taken the position that the reinstatement claim can be heard in district court. *Dronenburg v. Zech,* 741 F.2d 1388 (D.C.Cir. 1984). That court held that it was bound by previous circuit decisions holding that a district court has jurisdiction to review the constitutionality and legality of a military discharge. The main holding of the case was that the doctrine of sovereign immunity did not insulate the United States from claims for injunctive relief. Dronenburg had eliminated any claim for monetary damages in his amended complaint and sought only reinstatement. The court did not discuss the back pay issue, in part because Dronenburg's discharge was held to be proper and he was not reinstated.

While these cases are distinguishable on their facts or outcomes, other circuits have addressed the precise issue in this case. They have held specifically that a claim for reinstatement cannot be severed from the claim for back pay in order to be heard in the district court if the amount of back pay would total over $10,000, thus placing exclusive jurisdiction in the Claims Court. *Keller v. Merit Systems Protection Board,* 679 F.2d 220 (11th Cir 1982); *Carter v. Seamans,* 411 F.2d 767 (5th Cir.1969), *cert. denied,* 397 U.S. 941, 90 S.Ct. 953, 25 L.Ed.2d 121 (1970). These cases hold that because the district court's resolution of the claimant's right to reinstatement effectively disposes of all issues concerning his rights to backpay except the amount, adjudication of this issue by the district court would substantially infringe on the Claims Court's exclusive jurisdiction over the backpay claim. They therefore held that the district court did not have jurisdiction to review the reinstatement claim and transferred or dismissed the case accordingly.

We think this course is the better reasoned view and in keeping with the law in this circuit. We have stated that "a claimant may not avoid the exclusive jurisdiction of the Court of Claims merely by framing a complaint to seek nonmonetary relief when the result would be the equivalent of obtaining monetary damages." *Dole*, 749 F.2d at 336. This is precisely what the controllers are attempting to do by framing their complaint as a request for reinstatement which only secondarily, although automatically, implicates the Back Pay Act. Their formal request may be for reinstatement only, but clearly the United States will have to pay out money if they are successful. Thus, the Claims Court has exclusive jurisdiction over their claim.

In any case, the existence of the alternate remedy in the Claims Court means that the controllers cannot meet the necessary requirements for the grant of a writ of mandamus. Mandamus is an extraordinary remedy which should only be utilized in the clearest and most compelling of cases. In order to demonstrate a right to the issuance of the writ, the plaintiff must show: (1) that a public official has a plain duty to perform certain acts; (2) that the plaintiff has a plain right to have those acts performed; and (3) that there exists no other adequate remedy by which the plaintiff's rights can be vindicated. *Carter v. Seamans*, 411 F.2d at 773; *City of Highland Park v. Train*, 519 F.2d 681, 691 (7th Cir.1975), *cert. denied*, 424 U.S. 927, 96 S.Ct. 1141, 47 L.Ed.2d 337 (1976); 1 *Moore's Federal Practice* ¶ 0.62[17] (2d ed. 1986).

The Claims Court has full power to grant the controllers the relief they seek. Congress specifically amended the Tucker Act in 1972 to allow the Court of Claims to provide an entire remedy by granting the equitable relief of reinstatement and correction of records, as well as money damages. The existence of a fully adequate remedy in the Claims Court prohibits the issuance of the writ of mandamus in the district court. *Carter v. Seamans*, 411 F.2d at 773; *Cook v. Arentzen*, 582 F.2d 870, 876–77 (4th Cir.1978).

We are empowered to transfer this case to the Claims Court. 28 U.S.C. § 1631 provides:

Whenever a civil action is filed in a court as defined in section 610 of this title or an appeal, including a petition for review of administrative action, is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or notice for the court from which it is transferred.

■ This action could have been brought in the Claims Court originally. We find that "it is in the interest of justice" to transfer the case to the Claims Court at this time in order to allow the appellants to have their substantive claims heard in the proper forum.

Accordingly, it is ordered that this case be TRANSFERRED to the United States Claims Court.