828 F.2d 584
 44 Fair Empl.Prac.Cas. 1636,
44 Empl. Prac. Dec. P 37,529
Jane Anne LEYLAND, Plaintiff-Appellant,
v.
Verne ORR, Secretary of the Air Force, James F. Egbert,
Commander, United States Air Reserve Personnel Center, and
James E. Christman, Surgeon, United States Air Reserve
Personnel Center, Defendants-Appellees.
 No. 86-6441.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted July 8, 1987.
Sept. 23, 1987.
 
 A.P. Zmurkiewicz, San Diego, Cal., for plaintiff-appellant.
 E. Roy Hawkens, Washington, D.C., for defendants-appellees.
 Appeal from the United States District Court for the Southern District of California.
 Before BROWNING, Chief Judge, FLETCHER and POOLE, Circuit Judges.
 PER CURIAM:
 
 
 1
 Leyland was honorably discharged from the Air Force Reserves as psychologically unsuitable and physically unfit because of transsexualism and completion of sex change surgery. Leyland filed this action for declaratory relief, seeking to have her discharge vacated. The district court granted summary judgment for the Air Force. Leyland appeals, arguing her discharge was arbitrary and not based on an individualized assessment of her ability to perform her duties as required by Air Force regulations. We affirm.
 
 
 2
 Although a medical disposition hearing board that was convened to consider Leyland's fitness for duty recommended discharge on the grounds of psychological unsuitability, the Air Force Board for Correction of Military Records affirmed the discharge on grounds of psychological unsuitability and physical unfitness. We conclude that Leyland's discharge for physical unfitness was valid and therefore do not address arguments concerning the validity of her discharge for psychological unsuitability.
 
 
 3
 Air Force Regulation AFR 160-43, p 1-1a outlines the general purpose of ensuring medical qualification for duty:
 
 
 4
 It is the intent of these standards to ... remove from ... active service ... those individuals possessing medical defects which will significantly interfere with their duty performance or station assignability.
 
 
 5
 AFR 160-43, p 5-13b(5), (6), & (15) requires medical evaluation of transsexuals as to physical fitness for retention, listing the following as medical conditions that are "normally cause for referral to a medical evaluation board":
 
 
 6
 (5) Gonadectomy. Bilateral....
 
 
 7
 (6) Penis. Amputation.
 
 
 8
 ....
 
 
 9
 (15) Major abnormalities and defects of the genitalia such as change of sex, a history thereof, or complications ... residual to surgical corrections of these conditions.
 
 
 10
 Dr. Novicki, urology consultant to the Air Force Surgeon General, stated that the known and potential long-term effects of a sex change constitute a risk significant enough to restrict the individual's performance of Air Force duties, especially when remote geographic assignments are involved. Dr. Novicki stated that assigning such a person to such places "would be equivalent to placing an individual with known coronary artery disease in a remote location without readily available coronary care." He further stated "[i]t has been and remains the policy of the Surgeon General that such abnormalities be identified and that such individuals be denied entry or continued active duty for their benefit and for the benefit of the United States Air Force." See also Doe v. Alexander, 510 F.Supp. 900, 905 (D.Minn.1981).
 
 
 11
 Leyland does not argue that the Surgeon General in fact does not adhere to such a policy, nor has she contended that the policy is unreasonable. She does, however, argue that the policy against retention of transsexuals after sex change surgery violates the requirement of AFR 160-43, p 5-1g(5) that an evaluee's ability to perform his or her duties be individually assessed. Paragraph 5-1g(5) provides:
 
 
 12
 The principle issue in any case is whether or not a medical condition permits the evaluee to continue to perform the duties of his or her office, grade, or rank in such a manner as to reasonably fulfill the purpose of his or her employment on active duty without geographic restrictions.
 
 
 13
 It is undisputed that Dr. Christman, the certifying surgeon, reviewed Leyland's individual case file. It is also undisputed that Leyland has had sex change surgery and is within the class of persons who, according to Dr. Novicki, are to be denied retention on active duty. Leyland contends, however, that proof of her sex change operation and review of her individual record does not satisfy paragraph 5-1g(5). She contends this provision requires that she be given an opportunity to establish that she can perform her duties without geographic restrictions despite her sex change surgery.
 
 
 14
 At oral argument Leyland conceded that although paragraph 5-1g(5) requires individualized consideration of every case, some conditions (loss of a limb, for example) always require discharge because the particular condition invariably impairs the evaluee's ability to perform. Dr. Novicki declared without dispute that transsexualism in which sex reassignment surgery has occurred is such a condition, because all evaluees in this category have potential health problems which may require medical care and maintenance not available at all potential places of assignment. AFR 160-43, p 5-1g(5)'s requirement for individualized assessment cannot mean that evaluees with a proven medical condition, which in all cases would impair ability to perform without geographic limitations, must be allowed an opportunity to prove they are an exception when no exceptions exist. In such cases the only individualized determination required by the regulation is that the particular evaluee suffers from the disqualifying condition--a fact undisputed in this case.
 
 
 15
 AFFIRMED.