**Joanne E. DeGROAT, Plaintiff,**

v.

**Col. Ronald D. TOWNSEND,
et al., Defendants.**

**No. C–3–94–304.**

United States District Court,
S.D. Ohio,
Western Division.

July 5, 2007.

Julia Anne Davis, Vorys Sater Seymour & Pease, Columbus, OH, for Plaintiff.

Patrick Dennis Quinn, United States Attorney's Office, Dayton, OH, Rodger A. Drew, Jr., Air Force Legal Services Agency, General Litigation Division, Arlington, VA, for Defendants.

## DECISION AND ENTRY DISMISSING PLAINTIFF'S ACTION AS MOOT; JUDGMENT TO BE ENTERED ACCORDINGLY; TERMINATION ENTRY

RICE, Chief Judge.

The instant litigation arises out the discharge of Plaintiff Joanne E. DeGroat ("DeGroat"), a transsexual, from the United States Air Force ("USAF").[1] According to Plaintiff's Second Amended Complaint,[2] DeGroat was a member of the USAF from 1974 until 1989. From 1985 to 1989, she [3] was assigned to teach at the Air University Air Force Institute of Technology ("AFIT"), located at Wright Patterson Air Force Base ("WPAFB"), as an instructor of Electrical and Computer Engineering. During her period of service, Plaintiff's performance reports and evaluations were excellent, and she intended to continue her military career up to and including full retirement. At the time of her discharge, Plaintiff had achieved the rank of Major.

Throughout her service, Plaintiff was an anatomical male, named Joseph W. DeGroat. Beginning in 1980, she began a series of medical and psychiatric treatment and counseling for gender dysphoria or transsexualism. This treatment was conducted by and authorized by the USAF. Throughout the medical treatment, Plaintiff remained an anatomical male, and she appeared on-base and on-duty in male

---

1. As defined by the Ninth Circuit:

   A transsexual is "a person who is genetically and physically a member of one sex but has a deep-seated psychological conviction that he or she belongs, or ought to belong, to the opposite sex, a conviction which may in some cases result in the individual's decision to undergo surgery in order to physically modify his or her sex organs to resemble those of the opposite sex." Deborah Tussey, *Transvestism or Transsexualism of Spouse as Justifying Divorce*, 82 A.L.R.3d n. 2 (2000); *see Farmer v. Haas*, 990 F.2d 319, 320 (7th Cir.1993) (Posner, J.) ("The disjunction between sexual identity and sexual organs is a source of acute psychological suffering that can, in some cases anyway, be cured or at least alleviated by sex reassignment—the complex of procedures loosely referred to as 'a sex-change operation.' ").

   *Hernandez–Montiel v. INS*, 225 F.3d 1084, 1095 n. 7 (9th Cir.2000).

2. The following facts are taken from Plaintiff's Second Amended Complaint (Doc. # 33). In order to set forth the factual background of this litigation, the Court has accepted Plaintiff's allegations as true, and has construed them in the light most favorable to her. However, in addressing the merits of Plaintiff's claims, the Court will refer to the Administrative Record and will make findings based therefrom.

3. As indicated by this Court's Decision and Entry Overruling Defendants' Motion to Dismiss (Doc. # 29), the Court will use feminine pronouns to refer to the Plaintiff. Such use is not to be taken as a factual or legal finding. Rather, the Court considers it to be a matter of courtesy.

USAF uniform. However, the USAF medical staff encouraged and counseled her to dress in female street clothing when off-base and off-duty. On one occasion in March of 1988, Plaintiff was observed wearing female clothing to Sunday church services. This incident was reported to the WPAFB military police.

As a result of the March, 1988, report, Plaintiff was questioned, and she admitted to two instances of wearing female clothing in public. She explained that these actions were taken due to her sexual dysphoria and under the supervision of USAF medical staff. Shortly thereafter, Plaintiff was ordered to cease cross-dressing until she was separated from the USAF. In 1989, this order was amended to allow limited exceptions of cross-dressing. Plaintiff never violated these orders. Since her discharge, Plaintiff has presented herself to the public as a female. On April 10, 1989, Plaintiff legally changed her name from Joseph William DeGroat to Joanne Elizabeth DeGroat (Admin. R. II at 12). She has undergone sexual reassignment surgery, and is now an anatomical female.

## I. *Procedural History*

On July 18, 1988, the Commandant, Brigadier General Stuart R. Boyd, recommended that action be initiated against Plaintiff under Air Force Regulation ("AFR") 36–2 ¶ 3–7i(4), because she had "exhibited sexual perversion by attiring himself in female clothing and subjecting himself to public view by attending church on two occasions while dressed in such attire." Plaintiff was advised of this recommendation on the same date, and was advised of her rights. On August 24, 1988, DeGroat submitted a Response to the Notification of Action under AFR 36–2.

On October 14, 1988, the Chief of Psychology Services conducted a command-ordered psychological evaluation. The Chief indicated that Plaintiff had a history of intermittent gender dysphoria, a history of seeking counseling for this dysphoria, and two documented incidents of cross-dressing. He concluded that Plaintiff did not satisfy the diagnostic criteria for transsexualism. He further concluded that Plaintiff's condition did not warrant a Medical Examination Board review.[4]

On November 7, 1988, Plaintiff was notified that she had to show cause for retention on active duty for substandard performance due to a failure to show acceptable qualities of leadership required by an officer of her grade, based on her wearing female clothing on two instances and subjecting herself to public view (AFR 36–2, Chapter 2 ¶ 2–3(a)). On November 22, 1988, Plaintiff requested that her case be processed under the provisions of AFR 36–2, Chapter 7, and indicated that she intended to appear before the Board of Inquiry ("BOI").

On February 2, 1989, General Boyd rated Plaintiff on her Officer Performance Report ("OPR") as "does not meet standards" in the categories of "leadership skills" and "judgment and decisions." (Admin. R. I at 20–21). He marked an overall "nonconcur" to the assessment of the Head of the Department of Electrical and Computer Engineering that "Major DeGroat is a superior instructor who inspires his students to achieve extraordinary results" and by the Senior Dean of the AFIT and of the School of Engineering that Major DeGroat was an "outstanding performer." Plaintiff challenged Brigadier General Boyd's evaluation to the Officer

---

4. Plaintiff specifically alleges that this psychological examination was a sham, and was performed for the purposes of discrediting Plaintiff's diagnosis of transsexualism and of avoiding a Medical Evaluation Board.

Personnel Review Board. Her challenge was denied.

On February 6, 1989, a BOI was convened under AFR 36–2 to consider Plaintiff's case. On February 8, 1989, the Board found that Plaintiff had appeared in female clothing in public and had failed to show acceptable qualities of leadership for an officer of her grade. The Board further recommended that Plaintiff not be retained on active duty and that she receive an honorable discharge. On June 2, 1989, Plaintiff's military counsel, Captain Steven R. Parrish, submitted a Response to the Board of Inquiry (Admin R. II at 20–21). On June 14, 1989, a staff judge advocate concluded that the BOI findings were supported by a preponderance of the evidence, and recommended that the BOI findings and recommendations be approved (Admin R. II at 14–18). On June 19, 1989, Major General Harold W. Todd approved the recommendations of the BOI. Plaintiff's case file was forwarded to the Air Force Military Personnel Center for review.

On July 12, 1989, following an internal review of the BOI findings, the Air Force Board of Review concluded that Plaintiff should be removed from active duty under AFR 36–2, paragraph 3–14, with an Honorable Discharge. On July 20, 1989, the Secretary of the Air Force ordered that Plaintiff be removed from active duty, effective August 1, 1989 (Admin R. II at 2, 8). Plaintiff was honorably discharged from the USAF, pursuant to AFR 36–2, on August 1, 1989.

Plaintiff sought an administrative review of her discharge with the Air Force Board for Correction of Military Records, pursuant to 10 U.S.C. § 1552 (AFR 31–3). She argued that her discharge violated AFR 36–2, because no corrective action was taken prior to her discharge and there was no evidence that she violated her order not to cross-dress. She further argued that her discharge, which was allegedly based on her transsexualism alone, violated numerous provisions of the United States Constitution. In addition, she argued that the Air Force's conduct with respect to transsexualism and cross-dressing estops it from using this status and her conduct as a basis for her discharge. DeGroat requested reinstatement in the USAF with back pay and allowances. She further requested that General Boyd's ratings and comments on the January 25, 1989, OPR be removed from her records. On July 21, 1992, the Air Force Board of Correction of Military Records denied Plaintiff's application.

On July 21, 1994, Plaintiff initiated the instant litigation in this Court, pursuant to 10 U.S.C. § 1552, against Colonel William Orellana, the Commander of the 2750th Air Base Wing at WPAFB; Sheila Widnall, Secretary of the Department of the Air Force; and the United States of America (Doc. # 1), setting forth five claims for relief, to wit: (1) that Plaintiff's discharge was invalid, because she did not violate AFR 36–2; (2) that Defendants were equitably estopped from discharging her; (3) that AFR 36–2, as applied, violated her constitutional right to privacy, as provided by the First, Fourth, Fifth, and Ninth Amendments to the United States Constitution; (4) that Defendants' application of AFR 36–2 in this case was arbitrary and capricious; and (5) that the application of AFR 36–2 violated her right to procedural due process under the Fifth Amendment to the United States Constitution (Doc. # 1). In response, Defendants filed a Motion to Dismiss, for lack of Subject Matter Jurisdiction or, in the alternative, to transfer the case to the Federal Circuit (Doc. # 9). Therein, Defendants argued that the Court could not exercise jurisdiction over the action, in light of the Tucker Act, 28 U.S.C. § 1491, which provides that the Court of Federal Claims has exclusive ju-

risdiction over nontort claims against the government for greater than $10,000.[5] Defendants further argued that the government had not waived its sovereign immunity, to the extent that the lawsuit is not a Tucker Act case, and that Colonel Orellana was not a proper Defendant. On August 7, 1995, the Court overruled that Motion, concluding that it had subject matter jurisdiction due to Plaintiff's waiver of any entitlement to a monetary award in excess of $9,999.99. (Doc. # 29). Addressing sovereign immunity, the Court noted that Plaintiff might rely upon § 702 of the Administrative Procedures Act ("APA"), 5 U.S.C. § 702, and that she apparently had brought a claim against individual officers under *Larson v. Domestic and Foreign Commerce Corp.*, 337 U.S. 682, 689, 701–02, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949). The Court dismissed Colonel Orellana as a party-defendant, on the ground that he was not the official successor to the discharging officer. Plaintiff was directed to file an amended complaint to clarify her claims and her bases for this Court's subject matter jurisdiction and the government's waiver of sovereign immunity.

Plaintiff has filed an Amended Complaint (Doc. # 31) and a Second Amended Complaint (Doc. # 33). In her Second Amended Complaint (Doc. # 33 ¶ 2), Plaintiff indicated that she sought review under § 702 of the APA, under which a servicemember claiming something other than monetary relief may challenge, as final agency action, a decision of a Board for Correction of Military Records to sustain the discharge of the individual. *See Clinton v. Goldsmith*, 526 U.S. 529, 539, 119 S.Ct. 1538, 143 L.Ed.2d 720 (1999). Plaintiff set forth seven claims for relief against Col. Ronald D. Townsend, Commandant of the AFIT; Sheila Widnall,[6] and the United States of America, to wit: (1) that Plaintiff's discharge was invalid, because she did not violate any then-existing USAF regulation, including AFR 36–2; (2) that Defendants are equitably estopped from discharging Plaintiff; (3) that Defendants' order to cease cross-dressing violated her right to communicate, in violation of the First Amendment to the United States Constitution; (4) that Defendants' application of AFR 36–2 violated her right to privacy, as provided by the First, Fourth, Fifth, and Ninth Amendments to the United States Constitution; (5) that Defendants' application of AFR 36–2 in this case was arbitrary and capricious; (6) that application of AFR 36–2 violated her right to procedural due process under the Fifth Amendment to the United States Constitution; and (7) that Widnall and the United States violated 10 U.S.C. § 1552, by improperly denying Plaintiff reinstatement and appropriate correction to her military records (Doc. # 33). Plaintiff requested as relief (1) a declaratory judgment that the Air Force's actions and the regulations and policies which led to Plaintiff's discharge violated her federal constitutional rights; (2) a declaratory judgment that, but for the unlawful discharge, she would have been able to complete her service to retirement and would have qualified for retirement in 1994; and (3) to require the Air Force either to credit her with full service of her final term to retirement and to retire her at that level, or to reinstate Plaintiff to active duty for completion of her final term to retirement. Plaintiff specifically alleged that she was not seeking back pay or money damages.

---

**5.** The "Little Tucker Act," 28 U.S.C. § 1346(a)(2), confers jurisdiction on district courts for claims of $10,000 or less. Appeals of such cases are taken to the Federal Circuit.

**6.** As of this date, James G. Roche is the Secretary of the Air Force.

On February 7, 1996, Defendants filed a Motion for Summary Judgment (Doc. # 36). Plaintiff opposed that Motion, and likewise filed a Motion for Summary Judgment (Doc. # 41). On September 30, 1996, the Court overruled, as moot, both Motions for Summary Judgment (Doc. # 50). The Court explained that the parties had relied exclusively upon the administrative record, and indicated that the memoranda were, in fact, briefs on the merits. Accordingly, this action is now ripe for a decision on the merits.

As an initial matter, Defendant asserts that Plaintiff's action has been rendered moot, because she is no longer medically qualified for military service, on the ground that she has had sex reassignment surgery (Doc. # 36 at 33). Plaintiff responds that Defendant has provided no evidence or supporting authority that indicates that she may not be reinstated if she prevails on her claims (Doc. # 48 at 7). She further argues that "[i]f this court orders Major DeGroat's reinstatement[,] the Air Force can[,] if necessary[,] proceed to examine her medical eligibility for service and take action pursuant to its regulations." Thus, she asserts that her claims are not moot.

■ The Court must agree with the government that Plaintiff's sex reassignment surgery renders her ineligible for reinstatement. In support of its argument, the Air Force has provided the Declaration of Dr. Samuel J. Peretsman, who, as of March of 1995, was Chief Consultant to the Air Force Surgeon General in Urology and Urologic Oncology; Chairman of the Department of Urology at Wilford Hall Medical Center at Lackland Air Force Base, Texas; and Program Director of the Joint Military Medical Command Urology Residency (Doc. # 23, Ex. H, ¶ 1). Dr. Peretsman states that AFI 48–123 establishes the medical standards for retention of military personnel and the medical standards for admission or readmission of those seeking to enter military service (id. ¶ 2). Attachment 2 to AFI 48–123 lists the medical conditions and defects which may preclude continued military service and which require processing by a Medical Evaluation Board ("MEB"). Attachment 3 to AFI 48–123 lists the medical conditions and defects which are causes for rejection of admission or readmission to military service (id.). The Instruction applies to all members of the Air Force, as well as all applicants for military service in the Air Force, the Air Force Reserves, and the Air National Guard.

As noted by Dr. Peretsman, paragraph A2.10.1 of Attachment 2 states that a change of sex may preclude continued military service. In addition, amputation of the penis and bilateral gonadectomy may, in certain circumstances, independently require a MEB. Paragraph A3.17 of Attachment 3 states that a change of sex is a disqualifying condition for admission or readmission to military service. In addition, the absence of testicles may be independently disqualifying. Paragraph A3.18 indicates that amputation of the penis, in certain circumstances, is a disqualifying condition. Dr. Peretsman states that it is and has been the policy of the Surgeon General that such abnormalities be identified and that such individuals be denied entry or continued active duty for their benefit and for the benefit of the Air Force (Peretsman Decl. ¶ 3).

In addition to highlighting the relevant medical regulations, Dr. Peretsman discussed the rationales for these standards. He stated:

The known and potential complications of sex change operations are many and varied and can affect the long term health and duty performance of the individual. Additionally, many of these patients are maintained on hormone therapy which independently has potential

side effects. Further, individuals undergoing male to female gender conversions may encounter prostatic diseases which are more difficult to diagnose and to manage. Air Force duties require individuals from all career fields to serve in a variety of locations around the globe, often changing assignments on short-term notice. Military medical providers in the field are not familiar with the problems these patients may encounter. Individuals who have undergone sex change procedures would not be qualified for world-wide service and if the Air Force assigned them even to remote domestic locations they would be without access to potentially acute specialized tertiary medical care, which would only be available at major medical centers. Overall, it is neither in the best interest of the individual patient ·to have their access to necessary health care limited during potential Air Force duties, nor is it in the best interest of the Air Force to have to provide the medical care that these individuals may require.

(*Id.* ¶ 4).

Based on Dr. Peretsman's uncontroverted evidence, the Air Force has demonstrated that Plaintiff is ineligible under its regulations for reinstatement to active duty for the completion of her term.[7] *See*

7. Although Plaintiff has challenged the constitutionality of AFR 36–2, as applied to her case, she has not challenged the medical qualifications, AFI 48–123. Even if Plaintiff had challenged the medical qualifications, the Court would have deferred to the judgment of the military on such matters. Military regulations can be challenged under the APA, and will be struck down if they are facially unconstitutional. In addition, a service member may challenge the application of a regulation as unconstitutional. However, suits against the government incident to military service are highly restrictive. *See Wood v. United States*, 968 F.2d 738, 739–40 (8th Cir.1992).

All courts agree that the merits of a service secretary's decision regarding military affairs are beyond the competence of the judiciary to review. Although the merits of a decision committed wholly to the discretion of the military are not subject to judicial review, a challenge to the particular procedure followed in rendering a military decision may present a justiciable controversy. *Sargisson [v. United States]*, 913 F.2d [918, 921 (Fed.Cir.1990)]; *Murphy [v. United States]*, 993 F.2d [871, 873 (Fed.Cir. 1993)]; *Adkins [v. United States]*, 68 F.3d 1317, 1325 (Fed.Cir.1995). When procedural violations are involved, the tests or standards against which the court measures the military's conduct are the applicable statutes and regulations. In such examination, the court does not exercise the discretion reserved for the military, it merely determines whether the facts show compliance with required procedures. *Murphy*, 993 F.2d at 873.

*Moehl v. United States*, 34 Fed.Cl. 682, 688 (1996); *see Voge v. United States*, 844 F.2d 776, 780 (Fed.Cir.), *cert. denied*, 488 U.S. 941, 109 S.Ct. 365, 102 L.Ed.2d 355 (1988); *Lee v. United States*, 32 Fed.Cl. 530, 538–39 (1995)(quoting *Murphy*, 993 F.2d at 873.).

Several cases have held that a service secretary's determination of fitness for duty of a servicemember is beyond the competence of the judiciary to review and, thus, nonjusticiable. *See, e.g., Orloff v. Willoughby*, 345 U.S. 83, 93–94, 73 S.Ct. 534, 97 L.Ed. 842 (1953); *Murphy*, 993 F.2d at 874; *Bunch v. United States*, 33 Fed.Cl. 337, 340 (1995), *aff'd*, 78 F.3d 605 (Fed.Cir.1996); *Hoskins v. United States*, 40 Fed.Cl. 259 (1998); *Leyland v. Orr*, 828 F.2d 584 (9th Cir.1987). As stated by the Court of Federal Claims:

As this Court has recognized, the· decision as to whether someone is fit for military service is one properly committed to those executive branch personnel charged with the responsibility of insuring a fit and ready armed force. *Maier v. Orr*, 754 F.2d 973, 984 (Fed.Cir.1985). This Court has indicated that: the responsibility for determining who is fit or unfit to serve in the armed services is not a judicial province ... and ... courts cannot substitute their judgment for that of the military departments when reasonable minds could reach differing conclusions on the same evidence.

*Rice v. United States*, 31 Fed.Cl. 156, 166 (1994).

Thus, the medical qualifications for military service are usually considered a matter within

*Leyland v. Orr*, 828 F.2d 584 (9th Cir. 1987) (affirming discharge from the Air Force Reserves for physical unfitness, without an individualized medical assessment of her ability to perform her duties, when the reservist was a transsexual who had completed sex reassignment surgery). Accordingly, this Court concludes that Plaintiff's request for reinstatement is now MOOT.

In her Complaint, Plaintiff has also sought, as an alternative to reinstatement, an injunction, requiring the Air Force to credit her with full service of her final term to retirement and to retire her at that status. In other words, Plaintiff wishes the Air Force to credit her with twenty years of service, which would entitle her to full retirement benefits. In light of Plaintiff's reliance on the Administrative Procedures Act, 5 U.S.C. § 702, and her consequent forbearance of monetary damages, the Court must consider whether this a viable equitable remedy.

The Supreme Court has recognized that a judicial remedy which "may require one party to pay money to another is not a sufficient reason to characterize the relief as 'money damages.'" *Bowen v. Massachusetts*, 487 U.S. 879, 893, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988). However,

"Almost invariably ... suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' as that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from the defendant's breach of legal duty." *Bowen v.*

*Massachusetts*, 487 U.S. 879, 918–919, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988) (SCALIA, J., dissenting). And "[m]oney damages are, of course, the classic form of *legal* relief." *Mertens, supra,* at 255, 113 S.Ct. 2063.

*Great–West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002).

As discussed in this Court's prior Decision (Doc. # 29), in *Matthews v. United States*, 810 F.2d 109 (6th Cir.1987), a case involving discharged air traffic controllers, the Sixth Circuit has held that a suit for equitable relief had to be characterized as a Tucker Act claim, *i.e.,* one for monetary damages, when the back pay (which is equitable, rather than legal, in nature) that would be due and owing to the plaintiffs was well in excess of $10,000. The major concern in that litigation was that the plaintiffs were attempting to avoid the exclusive jurisdiction of the Court of Claims by framing what was essentially a monetary claim as an equitable claim to which substantial monetary relief (back pay well in excess of $10,000) would attach. *Id.* at 113. The court of appeals transferred the action to Court of Claims, which had exclusive subject matter jurisdiction over the litigation.

More recently, in *Sosa v. Secretary of the Dept. of Defense*, 2002 WL 31119700 (6th Cir. Sept.24, 2002), a Army serviceman petitioned the Army's Board for the Correction of Military Records (ABCMR) to change his service records to reflect that his separation from service was the result of a medical retirement, not an honorable discharge, after he was discharged

the discretion of the military, and courts will not substitute their judgment for the military regarding whether an individual is qualified to serve. Thus, although regulations may be challenged as facially unconstitutional and servicemembers may challenge a decision as procedurally defective (*i.e.,* the military did

not follow its own regulations), a challenge to the medical qualifications for active duty service is not justiciable. In addition, the Court need not determine whether the Air Force's application of AFR 36–2 was constitutional, because it concludes herein that Plaintiff has no remedy in this Court.

due to an accidental injury. On appeal to the Sixth Circuit, the court noted that if the serviceman had been determined to be 30% disabled or greater at the time of his separation from military service, he would have received a medical retirement and been entitled to greater benefits. On review, the court of appeals held that the district court lacked subject matter jurisdiction over the claim, reasoning, in part, that "[i]t is evident from his complaint that [his] main objective is to recover additional benefits from the federal government." *Id.* at \*2. Thus, the court of appeals concluded that, although framed in injunctive or declaratory terms, the plaintiff had stated a claim for a monetary remedy, implicating the Tucker Act. *Id.; see also Halle v. United States,* 1997 WL 545584 (10th Cir. Sept.4, 1997) (if the plaintiff's "prime objective" or "essential purpose" in filing the complaint was to obtain a retroactive award of retirement or disability benefits in excess of $10,000, the Tucker Act requires that his complaint be filed with the Court of Federal Claims, even if he requested only declaratory or equitable relief).[8]

■ In the present case, Plaintiff has alleged that had she not been discharged, she would have completed twenty years or more of service in the Air Force (2d A.Comp.¶ 11). She further alleges that as a result of the unjust discharge and denial of reinstatement, she has lost military pay, military privileges, retirement benefits and other emoluments accruing to persons who acquire twenty years of military service (*id.* ¶ 30). Clearly, the thrust of her request for service credit is that she be

deemed to have twenty years of military service, thus allowing her to receive her lost retirement pay. In fact, she explicitly requests, in addition to the service credit, that she be deemed retired "effective from the end of [her final] term at such rank and pay-grade as she would have then achieved but for her wrongful discharge." (*Id.* ¶ 39(C)). As with the serviceman in *Sosa,* Plaintiff's prayer for service credit can be interpreted only as a request to recover additional benefits from the government. The Court concludes that a court order requiring the Air Force to credit Plaintiff with full service of her final term and to retire her effective from the end of said term would amount to an award of monetary damages. However, in response to the government's various challenges to this Court's subject matter jurisdiction and its Motion for a More Definite Statement (Doc. # 32), Plaintiff has clearly foresworn monetary damages in her Second Amended Complaint, both explicitly and by relying on the APA (2d A.Compl.¶¶ 2, 39(C)). Accordingly, the Court concludes that it cannot award such a remedy to Plaintiff.

■ Because Plaintiff may be awarded neither reinstatement nor the retirement benefits that would necessarily result from the requested additional service credit and retirement, Plaintiff is left with no available remedy from the Court.

It has long been settled that a federal court has no authority to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in

---

8. As noted in its prior Decision (Doc. # 29), not all courts of appeals have concluded that equitable claims which ultimately result in monetary relief should be construed as claims for monetary damages and, thus, fall within the Tucker Act or Little Tucker Act. *See Chandler v. United States Air Force,* 272 F.3d 527 (8th Cir.2001). In *Kidwell v. ABCMR,* 56 F.3d 279 (Fed.Cir.1995), the Federal Court of Appeals stated that "where a monetary claim may be waiting on the sidelines, as long as the plaintiff's complaint only requests non-monetary relief that has 'considerable value' independent of any future potential for monetary relief," the complaint is considered one for non-monetary relief only.

issue in the case before it. For that reason, if an event occurs while a case is pending on appeal that makes it impossible for the court to grant any effectual relief whatever to a prevailing party, the appeal must be dismissed.

*Church of Scientology of Cal. v. United States,* 506 U.S. 9, 12, 113 S.Ct. 447, 121 L.Ed.2d 313 (1992) (quotation marks and citations omitted); *Adam v. Okla. Law Enforcement Retirement Bd.,* 2003 WL 1930339 (10th Cir. Apr.24, 2003). Because Plaintiff's action is MOOT due to a lack of available remedy, this action must be DISMISSED.

Judgment is to be entered in favor of Defendants and against Plaintiff.

WHEREFORE, the captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.